```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

CARLO MUSUMECI,

        Petitioner,

        -v-                                07-CV-6384(MAT)(VEB)
                                                      **ORDER**

NYS Department of Corrections,

        Respondent.

## I.    Introduction

Petitioner Carlo Musumeci ("petitioner"), who is represented by counsel, has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction in Wayne County Court of Manslaughter in the Second Degree (N.Y. Penal Law ("P.L.") § 125.15[1]) and Vehicular Assault in the Second Degree (P.L. § 120.03[1]).

## II.    Factual Background and Procedural History

Petitioner's convictions arose out of a motor vehicle accident occurring on August 20, 2003, wherein petitioner drove his car off the highway and crashed, causing serious injuries to himself, his ex-wife, Sabrina Musumeci, and causing the death of a third occupant, Robin Bridwell.

With respect to Robin Bridwell, petitioner was charged with two counts of Vehicular Manslaughter in the Second Degree (former P.L. § 125.12[1][2]) and one count each of Manslaughter in the Second Degree (P.L. § 125.15[1]) and Reckless Endangerment in the

First Degree (P.L. § 120.25). As to Sabrina Musumeci, petitioner was charged with two counts of Vehicular Assault in the Second Degree (former P.L. § 120.03[1][2]) and one count of Assault in the Second Degree (P.L. § 120.05[4]). He was also charged with two counts of Driving While Ability Impaired (N.Y. Veh. & Traf. § 1192[1],[4]).

A pre-trial hearing was held on April 8, 2004, in which the suppression of petitioner's blood samples was denied. Following an unsuccessful plea negotiation, a jury trial was scheduled for July 12, 2004. On the day of the scheduled trial, however, petitioner's counsel negotiated a plea arrangement with the prosecution wherein petitioner would plead guilty to two counts of the indictment, Manslaughter in the Second Degree and Vehicular Assault in the Second Degree. The agreed-upon sentence was 2 to 6 years incarceration on the manslaughter charge and 1 1/3 to 4 years on the vehicular assault charge, to run concurrently to one another. Petitioner was sentenced accordingly, except that the vehicular assault sentence was reduced to 1 to 3 years by the trial court.

On June 21, 2005, petitioner sought to vacate the judgment of conviction pursuant to New York Crim. Proc. Law ("C.P.L.") § 440.10 on the following grounds: (1) petitioner lacked the necessary mental capacity to enter a plea of guilty; (2) petitioner received ineffective assistance of counsel; and (3) petitioner was

misinformed as to the nature of the sentence to be imposed. See 440.10 Mot. and Supporting Mem., No. 03-131, dated 6/21/05. The county court denied petitioner's motion on the merits. See Mem. Decision, No. 03-131, dated 11/18/05. Leave to appeal that decision was denied by the Appellate Division, Fourth Department, on February 27, 2007. See People v. Musumeci, No. 03-131 (KA 05-02673), dated 2/27/07.

Petitioner then brought the instant petition ("Pet.") for habeas corpus pursuant to 28 U.S.C. § 2254, alleging essentially the same grounds for relief as he did in his 440.10 motion in state court. (Dkt. #1). The respondent filed an answer to the petition denying all of the claims. (Dkt. #6). For the reasons that follow, I find that habeas relief is not warranted and the petition is dismissed.

**III. Discussion**

    **A.   General Principles Applicable to Federal Habeas Review**

        **1.   Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment

4

"need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B. Merits of the Petition**

**1. Invalid Guilty Plea**

Petitioner first claims that, at the time he entered his guilty plea before the Wayne County Court, he lacked the mental and psychological ability to enter a knowing and intelligent plea. Pet. ¶22(A), Pet'r Mem. at 5-10. (Dkt. #9). Petitioner's argument is based on his diagnosis and treatment for "psychological troubles," including depression and schizophrenia. Pet'r Mem. at 5-6. The county court thoroughly reviewed petitioner's arguments and supporting documents in his 440.10 motion for *vacatur*, and found

5

that petitioner's plea was knowing, intelligent, and voluntary. See Mem. Decision, No. 03-131, dated 11/18/05 at 5-6.

Due process requires that a guilty plea be entered knowingly and voluntarily. Parke v. Raley, 506 U.S. 20, 28-29 (1992). "For the plea to be voluntary, it is axiomatic that the defendant must at least be competent to proceed." Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir. 1986) (internal quotation omitted). "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings." Godinez v.Moran, 509 U.S. 389, 401 n.12 (1993) (citing Drope v. Missouri, 420 U.S. 162, 171 (1975)).

The record indicates that the plea colloquy began with the following exchange:

> The Court: Under the law, I must decide whether to accept your plea of guilty or not. In order to make that decision, I must be assured that you're making your plea in a knowing manner, intelligent manner, and after due consideration. Accordingly, after your plea of guilty, I'll be asking you certain questions and will listen to and consider your answers. You will be sworn to answer these questions truthfully and under oath. But you may stop at any time to speak with your lawyer. Do you understand this?
>
> The Defendant: Yes, your Honor.

Plea Mins. at 5.

Petitioner proceeded to plead guilty to second-degree manslaughter and second-degree vehicular assault. Petitioner stated, under oath, that he was 29-years-old, had an eighth-grade education, and was currently prescribed medication for schizophrenia and depression. Id. at. 6. The court then asked whether petitioner felt he was in "good mental health" and if he was "comfortable in making the decision to go forward . . . under the terms of these two pleas of guilty[.]" Petitioner answered affirmatively, in the presence of his father (who had been actively involved in petitioner's case at every stage) and his attorney. Id. at 7. Petitioner then acknowledged that he had a chance to sit with his family and his attorney to "weigh the pros and cons" of the plea agreement. Id. When asked whether he was satisfied that he fully understood what was taking place, petitioner answered that he did. Id. The court then conducted an extensive colloquy, ensuring that: (1) petitioner was aware of the terms of the plea, (2) petitioner did not rely on any promises or conditions outside of the plea arrangment in entering his plea, (3) petitioner was not forced or coerced to plead guilty, and that he was doing so of his own free will, and (4) petitioner understood that he was giving up certain constitutional rights by pleading guilty. Id. at 7-10. Petitioner then reaffirmed that he wished to plead guilty. Id. at 10.

In his motion to vacate his conviction in county court, petitioner submitted a written psychiatric opinion by a physician who had reviewed petitioner's mental health evaluations, the plea colloquy, the sentencing minutes, and his psychiatric records from Groveland Correctional Facility. This information, however, did not pursuade the county court that he was not capable of understanding the proceedings at the time of his guilty plea, in light of the record of the plea colloquy and because the psychiatric opinion was not based upon personal contact with petitioner. See Mem. Decision, No. 03-131, dated 11/18/05 at 5-6. The evidence presented to the state court is similarly insufficient to overcome the "strong presumption of verity" that his statements at the plea allocution carry. Blackledge v. Allison, 431 U.S. 63, 74 (1977). Here, petitioner explicitly stated in his allocution that he fully understood the consequences of his plea and that he had chosen to plead guilty after a thorough consultation with both his attorney and his father.

Moreover, the state court's competency determination is a factual finding entitled to a presumption of correctness. Demosthenes v. Baal, 495 U.S. 731, 735 (1990); accord, e.g., Thomas v. Senkowski, 968 F.Supp.953, 955 (S.D.N.Y. 1997). Petitioner has not presented clear and convincing evidence to counter the factual finding of the state court that he was competent to plead guilty.

Finally, I note that although it may have been preferable for the trial court to explicitly inquire as to the "nature of [petitioner's] treatment or "what medication he was under at the time," Pet'r Mem. at 6; see e.g., United States v. Rossillo, 853 F.2d 1062 (2d Cir. 1988); Saddler v. United States, 531 F.2d 83 (2d Cir. 1976), the Supreme Court has not held that a state court must specifically inquire into a defendant's history of mental illness or medication regimen to satisfy due process requirements. Royster v. Perez, No. 08 CV 131(ARR), 2009 WL 1505278, *4 (E.D.N.Y. May 28, 2009)(rejecting challenge to validity of guilty plea based on trial court's failure inquire into history of mental illness and the medications taken by petitioner). Accordingly, the state court's disposition of this claim was not an unreasonable application of, nor contrary to, Supreme Court precedent.

## 2. Ineffective Assistance of Counsel

Petitioner next contends that his counsel was constitutionally ineffective because his attorney failed to correctly advise him of the duration of the sentence that would be imposed by the court upon his plea of guilty. Pet. ¶22(A)(c)-(d), Pet'r Mem. 11. Specifically, petitioner claims that his attorney indicated to him that the length of his sentence would be between 20 and 24 months. Pet'r Mem. at 11. The 440.10 court, in rejecting this claim, held that petitioner was "ably, meaningfully, and effectively represented in this case from its inception to the time of

sentencing. He received a very favorable disposition given his sentencing exposure in this case if convicted after trial given the alleged circumstances. This in large part was due to effective advocacy by [petitioner's] then counsel." See Mem. Decision, No. 03-131, dated 11/18/05 at 6.

The Supreme Court explained that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to deprivation of constitutional rights that occurred prior to the entry of a guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). Rather, a defendant who has pleaded guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was constitutionally deficient. Id; See also United States v. Garcia, 339 F.3d 116, 117 (2d Cir. 2003) (per curiam) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings.").

Where a defendant has pleaded guilty, the standard enumerated in Strickland v. Washington, 466 U.S. 668 (1984), requires him to show, first, that his attorney's advice to plead guilty was not "within the range of competence demanded of attorneys in criminal cases," and second, that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

10

Hill v. Lockhart, 474 U.S. 52, 56, 59 (1985); see also Roe v. Flores-Ortega, 528 U.S. 470, 485 (2000). Further, to show prejudice, the defendant must demonstrate that he had a viable trial defense. See Hill, 474 U.S. at 59-60. The prejudice inquiry thus turns largely on whether a defense "would have succeeded at trial," that is, whether the defendant "would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received." Id. at 59 (citation and internal quotation marks omitted).

Petitioner has presented affidavits from himself and from his father, both stating that they were told by petitioner's attorney that petitioner would receive a 24-month definite sentence and that he would be released after 18 months with no parole. See Aff. of C. Musumeci, ¶6; Aff. of G. Musumeci,, ¶4 (Attach. to 440.10 Mot.). The record of the proceedings does not substantiate this assertion, and the court finds petitioner's off-the-record assertions to be unpersuasive.

At the plea proceedings, petitioner's attorney indicated that his client was prepared to enter a plea based on his understanding that the prosecutor recommended a sentence of 24 months, and that the court would consider a sentence of 20 months. Plea Mins. 2. The court agreed that the minimum would be "no more than 24 [months]." Id. The prosecutor clarified that the sentence would be indeterminate, and recommended a sentence of 2 to 6 years for the

manslaughter charge and 1 1/3 to 4 on the vehicular assault, to run concurrently as to the single incident. Id. at 4. The prosecutor stated that he had "no problem" with a sentence of 20 or 24 months, in reference to the minimum end of the sentencing range. Id.

Two months later, the court sentenced petitioner to a term of 2 to 6 years, as agreed upon by the parties. Sentencing Mins. at 20. Petitioner did not move to withdraw his plea prior to sentencing, and there is no indication that petitioner was confused or misapprehended the arrangement at the time of his plea. It was not until nearly a year later that petitioner moved to set aside the judgment of conviction based upon, *inter alia*, his attorney's alleged misrepresentations regarding the sentencing consequences. Furthermore, there is nothing in the record to substantiate petitioner's claim that his attorney misrepresented the sentence or that counsel "was not aware of the proposed term." See Aff. of E. Fiandach, Esq. ¶ 33 (Attach. to 440.10 Mot.). Petitioner's sworn statements in his plea hearing contradict his claim of an involuntary guilty plea based on a misunderstanding about an alleged off-the-record sentence promise. Cato v. Superintendent, Groveland Corr. Facility, 463 F.Supp.2d 367, 380-381 (W.D.N.Y. 2006); see Blackledge, 431 U.S. at 74.

Petitioner also concedes that "[t]he history of this case after imposition of sentence on Petitioner clearly demonstrates his dissatisfaction with the sentence imposed." Pet'r Mem. at 12.

Stated another way, petitioner did not take issue with his plea arrangement until after he was sentenced. However, a petitioner's dissatisfaction with the ultimate sentence he received is not a valid basis to form a claim of ineffective assistance of counsel. Albanese v. United States, 415 F.Supp.2d 244, 254 (S.D.N.Y. 2005) (citing United States v. Garguilo, 324 F.2d 795, 797 (2d Cir. 1963). Petitioner has not shown that his attorney misrepresented the length of the sentence, and the record belies such a claim, as the plea transcript clearly indicates what the proposed sentencing range was. Petitioner thus cannot establish that his attorney's conduct was unreasonable or deficient.

Second, petitioner cannot establish prejudice as a result of counsel's representation. Specifically, he cannot show that but for counsel's alleged error, he would have proceeded to trial. The record reflects that petitioner elected to plead guilty on the first day of his scheduled trial, shortly after a pre-trial order of suppression was denied. See Plea Mins.2-5; Letter Decision, No. 03-131, dated 7/7/04. Had petitioner gone to trial, he would have faced a sentencing range of 5 to 15 years in state custody. See Plea Mins. at 11; P.L. § 70.00. This is not a case of actual innocence. It is uncontroverted that petitioner was driving at a high rate of speed when his car left the road, resulting in one woman's death and leaving another with serious back and facial injuries.

The trial court chose not to deviate from the agreed-upon sentence and addressed petitioner, on the record: "I respect you for coming forward and pleading guilty and accepting responsibility for this offense . . . I also believe there is no such thing as a life beyond redemption too. I think that you can use this experience today to either break you or you could use it as a building block to move on and eventually lead a decent, responsible, and contributing life." Sentencing Mins. at 19. It is clear from a review of the entire record that all parties involved worked to achieve a level of justice that was appropriate for petitioner. In light of the factual circumstances surrounding his case, petitioner was not likely to succeed at trial. Given the sentence that petitioner could have faced had he chosen to proceed to trial, I agree with the county court that petitioner's counsel secured a favorable disposition on his behalf.

Accordingly, the county court's decision did not run afoul of clearly established federal law.

**IV. Conclusion**

For the reasons stated above, Carlo Musumeci's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of

Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:   June 1, 2010
         Rochester, New York